**UNITED STATES RAILWAY EQUIP-
MENT CO., Plaintiff-Appellant,**

v.

**PORT HURON AND DETROIT
RAILROAD COMPANY,
Defendant-Appellee.**

**No. 73–1288.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 21, 1974.

Decided May 2, 1974.

Leonard Schanfield, Robert R. Tepper, Chicago, Ill., for appellant.

Kent Chandler, Jr., Robert F. Forrer, Chicago, Ill., for appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

HASTINGS, Senior Circuit Judge.

This action was brought by United States Railway Equipment Company against Port Huron and Detroit Railroad Company to recover amounts allegedly due under a lease agreement cover-

ing four hundred railroad box cars. Plaintiff lessor is an Illinois corporation whose principal place of business is in Illinois, and defendant lessee is a Michigan corporation whose principal place of business is in Michigan. The complaint invoked the diversity jurisdiction of the District Court for the Northern District of Illinois.

Process was served upon defendant at its offices in Michigan pursuant to the Illinois long-arm statute, Ill.Rev.Stat. 1971, ch. 110, §§ 16, 17. Thereafter, defendant appeared specially and moved the court to dismiss the cause for want of personal jurisdiction over the defendant, or, in the alternative, to transfer the cause to the Eastern District of Michigan pursuant to Title 28, U.S.C. § 1404(a). On January 31, 1973, the district court granted defendant's motion to dismiss, and on February 20, 1973, the court denied plaintiff's motion for reconsideration. Memorandum opinions were filed in response to both motions and are reported at 58 F.R.D. 588. This appeal followed.

■ The pertinent facts, as presented by the complaint and by affidavits submitted by the parties, are for the most part undisputed. Such conflicts as do exist must be resolved in plaintiff's favor for purposes of determining whether a prima facie case for *in personam* jurisdiction has been established. O'Hare International Bank v. Hampton, 7 Cir., 437 F.2d 1173, 1176 (1971). However, as to the following facts there would appear to be no substantial disagreement.

Defendant is a closely held corporation whose principal assets are 19.08 miles of railroad track extending from Port Huron to Marine City, all in St. Clair County, Michigan; two locomotives; and two cabooses. By agreement dated December 14, 1961, plaintiff leased four hundred box cars to defendant. The lease was effective by its terms until June 1, 1970, with an option in the lessee to extend the lease for five additional years. By letter to defendant dated June 3, 1970, plaintiff acknowl-

edged that the option would not be exercised by defendant; however, this same letter confirmed the parties' agreement to extend the lease until August 31, 1970, and thereafter on a month to month basis until terminated by either party. The complaint alleges that defendant has refused to pay $107,766.60, which represents a portion of the rent due for the period September 1, 1970, to February 29, 1972, under the rental computation clause contained in the 1961 agreement.

Both the 1961 agreement and the 1970 extension thereof were solicited, without defendant's request, by plaintiff's agent, in person, at defendant's offices in Port Huron, Michigan. Prior to the signing of the original 1961 contract, George Duffy, an agent of defendant, visited plaintiff's shop in Blue Island, Illinois, for the purpose of inspecting plaintiff's facilities there. After the contract was executed, Duffy returned to plaintiff's Blue Island shop to inspect the paint scheme of the cars prior to the first delivery under the lease.

None of the negotiations concerning the 1970 extension agreement took place in Illinois. The 1970 agreement was first signed by plaintiff in Illinois, and then forwarded to defendant in Michigan where it was "acknowledged and accepted." The signing sequence with respect to the 1961 agreement is not entirely clear, the only evidence being the dates on which the signatures of the parties' authorized agents were notarized, each in their respective states. The last notarized signature was that of plaintiff's agent, in Illinois.

The four hundred cars leased under the 1961 agreement constituted defendant's entire fleet of box cars. According to the lease terms, plaintiff was obligated to maintain the cars in good working order at its own expense. At least 288 of the 400 cars were actually repaired by plaintiff under the lease; the vast majority of these repairs were conducted in plaintiff's Blue Island, Illinois shop. The Blue Island facility was listed in the Official Railway Equipment Regis-

ter as the home repair shop for defendant's leased cars.

Defendant maintains no office in Illinois, nor does it generally conduct business there. Paragraph 20 of the 1961 agreement specifies that rights and obligations under the lease are to be governed by Illinois law. Also relevant here is Paragraph 5 of the lease, which requires that rental payments be made at plaintiff's Chicago, Illinois office, or at such other place as plaintiff may direct.

It is agreed that personal jurisdiction over defendant was here achieved, if at all, pursuant to Rule 4, Fed.R.Civ.P., and § 17(1)(a) of the Illinois Civil Practice Act, Ill.Rev.Stat.1971, ch. 110. Section 17(1)(a) provides, in pertinent part:

> "§ 17. *Act submitting to jurisdiction—Process.* (1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person * * * to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:
>
> (a) The transaction of any business within this State; * * *."

The district court concluded that defendant's contacts with Illinois were insufficient under the due process clause to enable Illinois to exercise jurisdiction over defendant. See International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1945); Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957). In reaching this conclusion the court emphasized that *plaintiff* initiated the transaction by soliciting defendant in Michigan; that "no part of the 1970 agreement, the subject matter of the instant suit, was performed by defendant, or any of its agents, while physically present in Illinois"; and that "[n]o negotiations concerning [the 1970] agreement were held in Illinois."

■ We believe the district court was unduly restrictive in considering only the parties' actions with respect to the 1970 agreement as jurisdictionally significant. That the cause of action may be based upon an alleged breach of the 1970 agreement does not preclude it from "arising from" the transaction of business prior to 1970. See Consolidated Laboratories, Inc. v. Shandon Scientific Co., 7 Cir., 384 F.2d 797, 801 (1967). Since practically all of the 1961 agreement was incorporated by reference into the 1970 contract, including that portion of the rental clause which provides the basis for plaintiff's claim, the negotiation and performance of both the 1961 and 1970 contracts may be regarded as a single business transaction for purposes of long-arm jurisdiction.

■ Thus viewed, the present case becomes substantially indistinguishable from O'Hare International Bank v. Hampton, *supra.* *O'Hare* was an action by an Illinois banking association against non-resident guarantors of the obligations owed a resident lessor by a non-resident lessee of an airplane. We quote in full the facts which there were held sufficient to confer jurisdiction under § 17(1)(a):

> "Both plaintiff and its assignor, the original lessor of the lease here involved, are legal residents of Illinois. Negotiations for the lease were commenced by a phone call to the lessor's Chicago office by one of the defendants; subsequent discussions with at least one of the defendants occurred in Illinois. The lease was not accepted until executed in Illinois and payments under it were to be made at Chicago, Illinois, or at such other place as the lessor shall designate. The guaranty in question specifically provided that it 'shall be construed according to the law of the State of Illinois, in which State it shall be performed. * * *'" 437 F.2d at 1176–1177.

In concluding that these facts established the requisite "minimum contacts" with Illinois, Judge Pell observed:

> "The defendants certainly must have contemplated the effects in Illi-

nois of a failure to make the monthly rental payments. * * * Furthermore, the fact that the guaranty was to be construed according to Illinois law and performed in that state clearly demonstrates that the defendants 'invoked the benefits and protection' of the state. * * *" 437 F.2d at 1177 (citations omitted).

The only significant fact present in *O'Hare* which is missing here is that in *O'Hare* the defendant initiated the lease negotiations by contacting plaintiff's assignor in Illinois. In the context of the present transaction between corporations, involving substantial sums of money, we cannot regard such difference as controlling. The present lease contemplated and in fact produced substantial on-going activity within Illinois, a factor apparently not present in *O'Hare*.

Two recent Illinois Appellate Court decisions have confirmed the accuracy of *O'Hare* as a statement of Illinois law. See Cook Associates, Inc. v. Colonial Broach & Machine Co., 14 Ill.App.3d 965, 304 N.E.2d 27 (1973); Colony Press, Inc. v. Fleeman, 17 Ill.App.3d 14, 308 N.E.2d 78 (1974). *Colony Press* involved the issue "whether defendant's placement of a single interstate telephone order, his return of a corrected copy of that order and the acceptance of that order shipped f.o.b. Chicago, constituted the 'transaction of any business,' within the meaning of the 'long arm' statute * * *." 17 Ill.App.3d at 17. In concluding that the long-arm statute did apply, the court specifically rejected the argument that the "benefits and protection" test which Illinois has applied in tort cases does not apply in determining jurisdiction under § 17(1)(a). See Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). With respect to the *in terrorem* argument that the court's decision would allow large mail order houses to force distant buyers to defend suits in Illinois, the court responded as follows:

"It may not in fact be proper to require an out of state customer of a mail order house to defend an action here. However, this is not before us. Section 17 of the Civil Practice Act reflects a conscious purpose to assert jurisdiction over non-resident defendants to the extent permitted by the due process clause. * * * Illinois courts have recognized under this attitude that jurisdiction is not merely dependent upon contacts with this state but upon such factors as the nature of the business transaction, the applicability of Illinois law, the contemplation of the parties and the likelihood that witnesses would be found here. * * * *Here, defendant is a business company that had voluntarily entered into a business transaction with an Illinois plaintiff with plaintiff's performance wholly conducted within Illinois. Also, Illinois law would be applicable in disputes arising under this contract.* * * * In addition, * * * it may be said that defendant benefited from the services of the State of Illinois in the protection of these goods from theft and fire prior to their actual movement out of Illinois. * * * We conclude that there were sufficient minimum contacts in this one transaction for purposes of in personam jurisdiction so as not to offend traditional notions of fair play and substantial justice in requiring defendant to defend this action in Illinois." 17 Ill.App.3d at 19–20 (citations omitted, emphasis added).

See also, In-Flight Devices Corp. v. Van Dusen Air, Inc., 6 Cir., 466 F.2d 220 (1972); Scovill Manufacturing Co. v. Dateline Electric Co., 7 Cir., 461 F.2d 897 (1972); Fisons Ltd. v. United States, 7 Cir., 458 F.2d 1241, cert. denied, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (1972); Consolidated Laboratories, Inc. v. Shandon Scientific Co., *supra*.

Since the district court did not rule thereon, we intimate no views as to the merits of defendant's alternative motion to transfer the cause to the Eastern District of Michigan.

In light of the foregoing, the judgment of the district court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.