JEROME J. GORDON II, Plaintiff-Appellant, v. ROBERT Y. TOW, Defendant-Appellee.

First District (4th Division)   No. 85—0075

Opinion filed September 25, 1986.

Barry T. McNamara and Wayne D. Lipson, both of Chicago, for appellant.

David F. Graham, of Sidley & Austin, of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiff, Jerome J. Gordon, brought a two-count action against defendant, Robert Y. Tow, the general partner of Matrix Alpha Ltd. (Alpha), a Rhode Island limited partnership. Plaintiff sought rescission of his purchase of a limited partnership interest in Alpha, alleging violations of the Illinois Security Law of 1953 (Ill. Rev. Stat. 1983, ch. 121½, par. 137 *et seq.*) and common law fraud. Tow, a Rhode Island resident, moved to dismiss the complaint for lack of *in personam* jurisdiction. The trial court sustained this motion, holding that Tow had not invoked the benefits and protections of Illinois law and was not engaged in the "transaction of business within this State" within the meaning of the Illinois "long-arm" statute. (Ill. Rev. Stat. 1983, ch. 110, par. 2—209(a)(1).) Gordon appeals, contending that Tow was subject to *in personam* jurisdiction in Illinois.

We affirm.

BACKGROUND

Robert Tow (Tow) is the president of Matrix Publications, Inc. (Matrix), a Rhode Island corporation located in Providence, Rhode Island, which is primarily engaged in the publication of photography books. Tow, a resident and citizen of Rhode Island, has no office, place of business, bank account, employee or agent in Illinois. In October 1981 Tow and Matrix formed the Alpha limited partnership under the laws of Rhode Island. The limited partnership agreement provides that "the rights and liabilities of the parties shall be determined in accordance with the applicable provisions of the laws of the State of Rhode Island, and this Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations of such state." The performance of Alpha's business was intended to take place in its principal place of business in Providence, Rhode Island. According to Tow, he intended to restrict the sales of interests in Alpha to Rhode Island residents in order to avoid subjecting those interests to the laws of other States.

On March 29, 1982, Gordon, domiciled in Chicago, purchased a limited partnership interest in Alpha for $20,000. On May 2, 1984, Gordon filed a two-count complaint for rescission, alleging that this investment was a "security" within the meaning of the Illinois Security Law of 1953 (Ill. Rev. Stat. 1983, ch. 121½, par. 137.2—1) which was not registered in Illinois prior to its sale (Ill. Rev. Stat. 1983, ch. 121½, par. 137.5) entitling Gordon to void the transaction (Ill. Rev. Stat. 1983, ch. 121½, par. 137.13). Gordon further alleged that a prospectus provided by Tow in connection with the sale contained numerous misstatements and omissions which amounted to fraud. Gordon asserted that he had been solicited in Illinois by Tow to purchase the limited partnership interest.

On June 11, 1984, Tow filed a special and limited appearance and a motion to dismiss Gordon's complaint for lack of personal jurisdiction. Attached to his motion was Tow's affidavit, which described his version of the events preceding the sale of the shares in Alpha. According to Tow, he met Gordon in 1980. Gordon obtained his name from Charles Traub, a New York City art instructor who served as a consultant editor for Matrix. At this initial meeting, and at a subsequent meeting in March 1981, Gordon visited Tow in Rhode Island and proposed that Matrix publish Gordon's photography book, but Tow declined the offers both times. Tow's affidavit stated that in the fall of 1981, after the Alpha partnership had been formed, Tow received a telephone call from Traub. Although Traub was not associ-

ated with or employed by Alpha, he advised Tow that he, Traub, mentioned Alpha to Gordon, that Gordon seemed interested in investing in the partnership, and that Gordon would subsequently contact Tow. Gordon later telephoned Tow in Rhode Island, expressed a desire to invest in Alpha, requested materials regarding Alpha and again discussed the possibility of Matrix distributing his book. Tow claimed that he did not solicit or communicate with Gordon regarding Gordon's investment in Alpha prior to this telephone conversation. At no time was Tow or any of his agents physically present in Illinois in connection with Tow's transactions with Gordon. Pursuant to Gordon's request, Tow forwarded an Alpha prospectus and other materials to Gordon's investment advisors. Subsequently, Tow mailed other materials regarding Alpha from Rhode Island to Chicago, but all materials which were mailed into Illinois were sent at the request of Gordon or his agents.

After March 22, 1982, Tow received, in Rhode Island, a subscription agreement, which was signed by Gordon, accompanied by a $20,000 check, offering to become a limited partner in Alpha. According to Tow, when he received this agreement, it bore only Gordon's signature, and subsequently was signed and accepted by Tow in Rhode Island.

In opposition to Tow's motion to dismiss, Gordon presented his own affidavit as well as those of his two investment advisors and his attorney. According to Gordon's affidavits, Traub introduced him to Tow in 1981 in New York City and they "discussed the possibility of [Gordon's] investment in the limited partnership [Tow] was forming in exchange for [Tow's] publication and/or distribution of [Gordon's] photographic book." Gordon told Tow that he lived in Chicago and that Tow should contact his advisors and attorney in Chicago. In October 1981, Gordon's advisor received, in Illinois, an Alpha prospectus and limited-partnership subscription agreement for a limited partnership interest in Alpha. The affidavits submitted by Gordon further reveal that between November 1981 and March 1982, Tow and Gordon's advisors and attorney were in frequent contact through telephone calls and written correspondence concerning the negotiations for Gordon to invest in Alpha and Matrix's distribution of Gordon's photography book. Accompanying these affidavits were financial materials and advertisements pertaining to Matrix and Alpha which had been sent to Illinois from Rhode Island as well as correspondence between the participants to the negotiations.

Based on the parties' pleadings, documents, affidavits and written and oral argument, the trial court dismissed Gordon's complaint

for lack of *in personam* jurisdiction on December 5, 1984. A timely notice of appeal was filed.

OPINION

The sole issue on appeal is whether the trial court correctly determined that the facts of this case were insufficient to subject Tow to *in personam* jurisdiction under the "long-arm statute," section 2—209(a)(1) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—209(a)(1)), which provides in relevant part:

"(a) Any person, whether or not a citizen or resident of the State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person *** to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State;
* * *

(c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based on this Section."

Initially, we reject the contention that the sole focus is whether Tow had sufficient "minimum contacts" with Illinois so as to comport with the fourteenth amendment's due process limitations on a State's jurisdiction over a nonresident defendant. *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.

The Illinois Supreme Court has stated that the "boundaries or limits under our statute are not to be equated with the 'minimum contacts' test under the due process clause." (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 197, 429 N.E.2d 847, 850; see also *Green v. Advanced Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436, 427 N.E.2d 1203.) An invocation of "long-arm" jurisdiction must satisfy two criteria: (1) the statutory requirements of section 2—209 (Ill. Rev. Stat. 1985, ch. 110, par. 2—209), and if the requirements of section 2—209 are met, (2) the constitutional requirements of due process. (*Financial Management Services, Inc. v. Sibilsky & Sibilsky, Inc.* (1985), 130 Ill. App. 3d 826, 832-33, 474 N.E.2d 1297.) "Clearly, if jurisdiction is not found to be proper under the long-arm statute, there is no need to determine whether jurisdiction is constitutionally permissible." *R. W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 311, 489 N.E.2d 1360, 1364.

Where a plaintiff seeks to exert *in personam* jurisdiction over a nonresident defendant pursuant to the long-arm statute and

the defendant denies the existence of jurisdiction, the burden of establishing a valid basis for jurisdiction rests with the party who seeks to establish its existence. (*R. W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 310, 489 N.E.2d 1360, 1363.) While even a single transaction may suffice for jurisdiction, that transaction must: "(1) give rise to the cause of action and (2) be one by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State and voluntarily invokes the benefits and protections of the State's laws." *Conroy v. Andeck Resources, Ltd.* (1986), 137 Ill. App. 3d 375, 388-89, 484 N.E.2d 525, 536.

Gordon contends that Tow's activities exceeded a single business transaction and constituted a continuous pattern of correspondence and telephone calls, amounting in the aggregate to the transaction of business within this State. However, the " 'ultimate test is the substance of the act rather than the quantity.' " (*United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 854, 387 N.E.2d 1272, 1277, quoting *Kropp Forge Co. v. Jawitz* (1962), 37 Ill. App. 3d 475, 481, 186 N.E.2d 76, 79, *appeal denied* (1979), 79 Ill. 2d 618.) According to Tow, Gordon was responsible for initiating the negotiations which resulted in Gordon's eventual investment in Alpha, Gordon sought out Tow to have Matrix publish his book, and all mailings and communications from Rhode Island to Illinois were sent at the request of either Gordon or his advisors. Thus, Tow reasons, Gordon cannot be allowed to "lure the nonresident defendant" into Illinois. (*Chicago Film Enterprises v. Jablanow* (1977), 55 Ill. App. 3d 739, 742, 371 N.E.2d 161, 164; see *AAAA Creative, Inc. v. Sovereign Holidays, Ltd.* (1979), 76 Ill. App. 3d 514, 516, 395 N.E.2d 66, 68.) We agree.

■ In assessing a nonresident's contacts with this State, "[o]nly the acts of defendant can be considered in determining whether business was transacted in Illinois." (*Unarco Industries, Inc. v. Frederick Manufacturing Co.* (1982), 109 Ill. App. 3d 189, 192, 440 N.E.2d 360, 362; see *City of East Moline v. Bracke, Hayes & Miller* (1985), 133 Ill. App. 3d 136, 140, 478 N.E.2d 637, 640; *Chicago Film Enterprises v. Jablanow* (1977), 55 Ill. App. 3d 739, 742, 371 N.E.2d 161, 164.) The determination of whether defendant sufficiently transacted business in Illinois so as to avail himself of the benefits of Illinois law requires consideration of several factors: who initiated the transaction (*Chicago Film Enterprises v. Jablanow* (1977), 55 Ill. App. 3d 739, 371 N.E.2d 161); where the contract was entered into (*Servo Instruments, Inc. v. Fenway Machine Co.* (1980), 92 Ill. App.

3d 509, 415 N.E.2d 34); and where the performance of the contract was to take place (*Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 395 N.E.2d 1131). While none of these factors has been held to be controlling, each of them has been held to be significant. See *Empress International, Ltd. v. Riverside Seafoods, Inc.* (1983), 112 Ill. App. 3d 149, 153-54, 445 N.E.2d 371.

■ Considering these criteria, we conclude that the circuit court properly dismissed Gordon's complaint for lack of personal jurisdiction. For the reasons stated, we hold that it was Gordon who initiated the transaction outside of Illinois, the agreement was entered into outside of Illinois, and the contract was to be performed outside of Illinois.

■ Gordon contacted and met Tow in Rhode Island to discuss Gordon's investment in the limited partnership. All later contacts by Tow regarding Gordon's investment flowed from that initial encounter. Tow asserts in his affidavit that it was Gordon who initiated the idea of his investment in Alpha. Gordon's affidavits do not contest Tow's assertion regarding who initiated the transaction, but merely state that the possibility of his investment was discussed. "[W]here well-alleged facts within an affidavit are not contradicted by counteraffidavit, they must be taken as true notwithstanding the existence of contrary averments in the adverse party's pleadings." (*Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 248, 421 N.E.2d 231, 235, *appeal denied* (1981), 85 Ill. 2d 565.) The assertion in Tow's affidavit that Gordon initiated the transaction was not controverted in Gordon's affidavits. We therefore conclude that the transactions giving rise to this lawsuit were initiated by Gordon in Rhode Island.

In his complaint for rescission, Gordon alleged that Tow had solicited his investment in Alpha. However, such a conclusionary allegation in a pleading is insufficient to establish a *prima facie* case of *in personam* jurisdiction. (*People v. Parsons Co.* (1984), 122 Ill. App. 3d 590, 597, 461 N.E.2d 658, 664; see *Unarco Industries, Inc. v. Frederick Manufacturing Co.* (1982), 109 Ill. App. 3d 189, 192, 440 N.E.2d 360, 361.) We note that the parties' affidavits attest to numerous telephone conversations and letters sent into Illinois by Tow or his agents. Nevertheless, it has been held that "the exchange of phone calls and correspondence are [*sic*] not enough to support jurisdiction." (*Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 349, 395 N.E.2d 1131, 1136.) Irrespective of the fact that some of Tow's telephone and written contacts with Gordon came into Illinois from out of State, these communications are not necessarily of themselves sufficient to demonstrate that Tow had "volun-

tarily [sought] the benefits and protections of the laws of this State." *Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 348, 395 N.E.2d 1131, 1135.

■ The affidavits indicate that the limited partnership agreement was entered into and became binding in Rhode Island. "The long-established rule in Illinois governing the making of contracts is that the place where the last act necessary to give validity to the contract is done is the place where the contract is made." (*Youngtown Sheet & Tube Co. v. Industrial Com.* (1980), 79 Ill. 2d 425, 433, 404 N.E.2d 253, 257.) Tow's affidavit states affirmatively that the subscription agreement he received from Gordon shortly after March 29, 1982, bore only Gordon's signature and that he, Tow, signed the agreement thereafter in Rhode Island. Nowhere, in any of the affidavits submitted by Gordon, is Tow's averment directly contradicted. The counteraffidavit of Gordon's financial advisor, Edward Neisser, merely avers that on June 22, 1982, the advisor received a subscription agreement signed by Tow.

While factual conflicts arising from the affidavits must be resolved in favor of the plaintiff (*Financial Management Services, Inc. v. Sibilsky & Sibilsky, Inc.* (1985), 130 Ill. App. 3d 826, 831, 474 N.E.2d 1297), in order to create a factual conflict the counteraffidavit must "set forth with particularity facts inconsistent with defendant's affidavit." (*Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 249, 421 N.E.2d 231, 235, *appeal denied* (1981), 85 Ill. 2d 565.) In the case at bar, there is nothing in the record to show that the subscription agreement received by Neisser in January 1982 and bearing Tow's signature was the one Gordon signed and sent to Tow in March 1982. Consequently, there is no factual conflict in the parties' affidavits, and Tow's averment that he signed the subscription agreement after it had been signed by Gordon must be taken as true. (*Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 248, 421 N.E.2d 231, 235, *appeal denied* (1981), 85 Ill. 2d 565.) *International Merchandising Associates, Inc. v. Lighting Systems, Inc.* (1978), 64 Ill. App. 3d 346, 380 N.E.2d 1047, relied upon by Gordon, is distinguishable. In *International Merchandising*, the court's finding of jurisdiction was based on factors not present in the case at bar, including the fact that in that case the contract was formed in Illinois.

We also consider the place of performance in evaluating the defendant's contacts with our State. All the Alpha partners are Rhode Island residents except Gordon and one Massachusetts resident; the partnership was formed under and is governed by Rhode Island State law. Since the limited partnership agreement was to be

performed in Rhode Island, and the record is devoid of any indication that performance was to take place anywhere other than Rhode Island, the contract performance can only be said to take place in Rhode Island.

The case at bar is distinguishable from *Cook Associates, Inc. v. Colonial Broach & Machine Co.* (1973), 14 Ill. App. 3d 965, 304 N.E.2d 27, where the court found that the defendant initiated the transaction and the performance was to take place in Illinois. The court held in *Cook* that the defendant knew or should have known that its contract with plaintiff would be performed in Illinois. *Morton v. Environmental Systems, Inc.* (1979), 55 Ill. App. 3d 369, 370 N.E.2d 1106, also relied upon by defendant, is similarly distinguishable from the case at bar in that the defendant in *Morton* was physically present in Illinois, the solicitation took place in Illinois, and the tender of the purchase price took place in Illinois.

Based on these factors, the trial court correctly concluded that Tow had insufficient contacts with the State of Illinois to subject him to the *in personam* jurisdiction of our courts. The defendant did not purposefully avail himself of the privilege of conducting business in Illinois such that he invoked the benefits and protections of the laws of Illinois. To construe Tow's phone calls and letters which were sent into Illinois as the transaction of business in Illinois "would be to destroy the distinction between the transaction of business *in* Illinois and the transaction of business *with* an Illinois [resident]." (Emphasis added.) *Wessel Co. v. Yoffee & Beitman Management Corp.* (N.D. Ill. 1978), 457 F. Supp. 939, 941.

For the reasons stated, the order of the trial court is affirmed.

Affirmed.

JIGANTI and JOHNSON, JJ., concur.