**LEONARDO'S, INC., Plaintiff,**

v.

**GREATHALL, LTD., Richard Shapiro, and Bonnie Shapiro, Defendants.**

No. 89 C 411.

United States District Court, N.D. Illinois, E.D.

May 31, 1989.

Steven Messner, Wilmette, Ill., for plaintiff.

Stephen L. Tyma, McDermott, Will & Emery, Chicago, Ill., Robert C. Sipkins, Bernick and Stern, St. Louis Park, Minn., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Leonardo's, Inc. ("Leonardo") brings this diversity action against Greathall, Ltd. ("Greathall"), Richard Shapiro ("Richard") and Bonnie Shapiro ("Bonnie") for breach of contract and fraud. The defendants have moved to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction, and in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a). The motion will be denied.

### FACTS

The facts relevant to this motion are not in dispute, and come from the complaint as well as affidavits attached to the motion and response. Richard Hirsch ("Hirsch") is an Illinois resident. In 1981, he created Leonardo, an Illinois corporation. His corporation runs concessions at state fairs.

Richard and Bonnie are Minnesota residents. In 1971, they incorporated Greathall, a Wisconsin corporation, for the purpose of operating a summer Renaissance festival in the northern Illinois area. They christened the festival King Richard's Faire, and held the first one in the summer of 1972. From 1972 to 1974 the festival took place in Gurnee, Illinois, just a few miles south of the Wisconsin border. In

1975, they moved the fair to Bristol, Wisconsin.

From 1972 to late 1983, Robert Rogers served as General Manager of the fair. Rogers lived in Lake Forest, Illinois, and established an office, bank account, mailing address and phone number for the fair in Illinois. He also recruited Illinois concessionaires for the fair.

In late 1983, Rogers left Greathall's employ. Shortly thereafter, Greathall closed its Illinois office, bank account, and post office box. It retained the Illinois mailing address for informational purposes, and continued to do a substantial amount of advertising in the Chicago area.

When Rogers left, Richard took over management of the fair. In December, 1983, he contacted Hirsch and other concessionaires, requesting a meeting in Chicago to negotiate contracts for the coming season. After a series of negotiations, Greathall and Leonardo entered into a multi-year contract for the 1984, 1985 and 1986 seasons. During those three years, Leonardo operated lemonade stands at the fair.

When the contract expired, Richard telephoned Hirsch from Minnesota, and they agreed to a contract for the 1987 season nearly identical to the previous one. Richard mailed it to Hirsch in Illinois for his signature.

The 1987 fair did not do well. On December 2, 1987, Richard wrote to Hirsch, noted that 1987 had been a poor year for the fair, and indicated hopes for improvement in 1988. He also enclosed a contract for the 1988 fair, and told Hirsch that Leonardo's fees for the 1988 fair were due in Greathall's office by December 31. The contract again was nearly identical to the previous contracts, and stated that the fair would take place on the same location as the previous year. It also provided that it would be governed by Wisconsin law.

Hirsch executed the contract, and on December 22 sent Greathall $18,000 to reserve Leonardo's place in the 1988 fair.

The fair never came. As it turns out, Greathall had stopped making payment on the fair's property in July, 1987 and had entered into a default foreclosure consent decree on July 14, 1987 relinquishing its rights to the property. Greathall did not refund Leonardo's $18,000, so Leonardo sued Greathall and the Shapiros for breach of contract and fraud. The defendants have moved to dismiss for lack of personal jurisdiction, or in the alternative, to transfer this case to the United States District Court for the Eastern District of Wisconsin.

## DISCUSSION

*Personal Jurisdiction*

In the absence of a federal statute authorizing service of process, a federal court may exercise personal jurisdiction over an out-of-state defendant only as provided by the long-arm statute of the state in which the court sits. *See* Fed.R.Civ.P. 4(e); *Omni Capital International v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 108 S.Ct. 404, 409–10, 98 L.Ed.2d 415 (1987). Further, at least in diversity cases, the exercise of jurisdiction must comport with Fourteenth Amendment due process. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Mason v. F. Lli Luigi & Franco Dal Maschio,* 832 F.2d 383 (7th Cir.1987).[1]

Under the Illinois long-arm statute, a court may exercise jurisdiction over a defendant who either (1) has transacted any business within Illinois, or (2) has committed a tort in Illinois, provided that the cause of action arises from the jurisdictional act. Ill.Rev.Stat.1987 ch. 110, ¶ 2–209(a), (c). Leonardo contends that Greathall transacted business in Illinois from 1972 through late 1987 by hiring Illinois concessionaires for the Wisconsin fair, and further that Greathall committed a tort in Illinois by misrepresenting that it still owned the fairgrounds. The court need only address the first argument.

---

**1.** In *Rose v. Franchetti,* 713 F.Supp. 1203, 1211–1212 (N.D.Ill.1989), the court explored at length the paradox of applying Fourteenth Amendment limitations to federal court power. The court will not repeat that analysis here.

The defendants concede that they were transacting business in Illinois from 1972 through late 1983, when Rogers was their general manager.[2] They insist, however, that Greathall's Illinois business came to an end in early 1984, and that it thereafter transacted no business which could give rise to Illinois jurisdiction. Leonardo responds that Greathall continued to transact business within Illinois by maintaining their Illinois phone number and continuing to advertise and solicit concessionairs in Illinois, and that, in any case, the 1988 contract arose out of the earlier contacts with Illinois.

Leonardo's reliance on the Illinois phone number and advertisements rests on a confusion regarding the nature of their jurisdictional claim. In addition to the long-arm statute, Illinois courts long have recognized the "doing business" doctrine. This doctrine, a vestige of an era in which a state could assert jurisdiction over only those present within its borders (*see Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877)), allows the court to assume jurisdiction over corporations with substantial business in Illinois, on the fiction that this business renders them "constructively present in this State." *Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 199, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981); *Afirm, Inc. v. Frazee Paint & Wallcovering Co.,* 624 F.Supp. 973, 978 (N.D.Ill.1985). When proceeding under this doctrine, a plaintiff need not establish that his cause of action arose from the defendant's contacts with Illinois. *Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d at 200, 57 Ill. Dec. 730, 429 N.E.2d 847; *see also Helicopteros, Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ Because Greathall's only 1987 contacts with Illinois were its advertise-

ments, its informational phone number, and Richard's phone calls and mailings to Illinois, Leonardo wisely has not argued that Greathall was doing business in Illinois at the time. *See Loggans v. Jewish Community Center,* 113 Ill.App.3d 549, 556, 69 Ill.Dec. 484, 447 N.E.2d 919 (1983). Yet, Leonardo errs when it attempts to use the phone number and advertisements as predicates for jurisdiction under the long-arm statute: Since the record reveals no connection between these jurisdictional acts and Leonardo's causes of action, they cannot serve as the basis for jurisdiction under the long-arm statute. *See Berks v. Rib Mountain Ski Corp.,* 571 F.Supp. 500 (N.D.Ill.1983).

■ The phone calls and subsequent mailings to Hirsch, by contrast, did give rise to the claims in this case. In *Gordon v. Tow,* 148 Ill.App.3d 275, 101 Ill.Dec. 394, 498 N.E.2d 718 (1986), the court undertook an extensive examination of when telephone calls and mailings constitute jurisdictional acts under the long-arm statute, and set forth a multifactor test for determining when an out-of-state defendant transacts business within Illinois for jurisdictional purposes:

> The determination of whether defendant sufficiently transacted business in Illinois so as to avail himself of the benefits of Illinois law requires consideration of several factors: who initiated the transaction; where the contract was entered into; and where the performance of the contract was to take place. While none of these factors [is] controlling, each of them is significant.

*Id.* at 280, 101 Ill.Dec. 394, 498 N.E.2d 718; *see also Empress International, Ltd. v. Riverside Seafoods, Inc.,* 112 Ill.App.3d 149, 153, 67 Ill.Dec. 891, 445 N.E.2d 371 (1983).

---

**2.** Throughout their arguments, the defendants proceed on the assumption that if Greathall is subject to Illinois jurisdiction, then Richard and Bonnie are as well. Yet, even if the alter ego allegations in the complaint would have defeated Richard's efforts to hide behind Greathall's fiduciary shield, *see Club Assistance Program, Inc. v. Zukerman,* 594 F.Supp. 341, 345 (N.D.Ill. 1984), Bonnie appears to have a strong argu-

ment that she had no contacts with Illinois, and therefore cannot be haled into court here. Any argument on this score, however, has been waived by the defendants' failure to raise it. *See* Fed.R.Civ.P. 12(h)(1); *cf. Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702–04, 102 S.Ct. 2099, 2104–05, 72 L.Ed.2d 492 (1982).

Because all three factors weighed against exercising jurisdiction in *Gordon,* the court did not need to strike a balance among them. The instant case, however, presents a somewhat trickier situation. Greathall initiated the 1988 contract by mailing it to Hirsch, and Hirsch executed it in Illinois. The place of performance, however, was in Wisconsin. Moreover, the fact that the contract provided that Wisconsin law would govern, though not specifically included in the *Gordon* test, certainly weighs against finding that Greathall "sought to avail himself of the benefits and burdens of Illinois law." *Gordon,* 148 Ill. App.3d at 280, 101 Ill.Dec. 394, 498 N.E.2d 718.

Illinois cases provide little guidance in balancing these factors. *Compare Woodfield Ford, Inc. v. Akins Ford Corp.,* 77 Ill.App.3d 343, 32 Ill.Dec. 750, 395 N.E.2d 1131 (1979) (plaintiff initiated; formation in Illinois; performance outside Illinois; no choice of law provision; no jurisdiction) *with AAAA Creative, Inc. v. Sovereign Holidays,* 76 Ill.App.3d 514, 32 Ill.Dec. 119, 395 N.E.2d 66 (1979) (defendant initiated; formation in Illinois, performance in Europe; no choice of law provision; jurisdiction).[3] Such balancing, however, does not become necessary in this case.

In *United States Railway Equipment Co. v. Port Huron and Detroit Railroad Company,* 495 F.2d 1127 (7th Cir.1974), the parties had executed a contract in 1961 after the defendant had visited plaintiff's shop in Illinois for the purposes of inspecting the facilities. In 1970, the parties agreed to an extension of the contract, but none of the negotiations surrounding the extension occurred in Illinois. When the plaintiff brought suit in Illinois for breach of contract, the district court declined to exercise jurisdiction on the grounds that "[n]o negotiations concerning [the 1970]

agreement were held in Illinois." *Id.* at 1129.

The Seventh Circuit reversed. It held that "[s]ince practically all of the 1961 agreement was incorporated by reference into the 1970 contract, ... the negotiation and performance of both the 1961 and 1970 contracts may be regarded as a single business transaction for the purposes of long-arm jurisdiction." *Id.* Based on the defendant's contacts with Illinois in 1961, the district court should have exercised jurisdiction. *Id.* at 1130.

That case informs the analysis here. The contractual relationship between Greathall and Leonardo originated out of Greathall's transaction of business in Illinois in the early 1980's. Greathall thereafter began severing its ties with Illinois, but with respect to Leonardo, it willingly continued its relationship, with Richard avoiding subsequent trips to Illinois, at least in part, because the parties already had negotiated most of the terms of their relationship. *Compare Heil v. Morrison Knudsen Corp.,* 863 F.2d 546 (7th Cir. 1988). Thus, the earlier contacts figure into the jurisdictional equation. Adding them to Greathall's 1987 Illinois contacts with Leonardo establishes that the contract and fraud claims arose out of—i.e., lay in the wake of—Greathall's transaction of business within Illinois. *See J. Walker & Sons v. DeMert & Dougherty, Inc.,* 821 F.2d 399, 403 (7th Cir.1987). Accordingly, the Illinois long-arm statute reaches the defendants.

■ The defendants next argue that, even if the statute reaches them, due process prevents the court from exercising jurisdiction. This argument merits little discussion. The Fourteenth Amendment Due Process Clause requires only that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'tradi-

**3.** As this court previously has discussed, the Illinois Supreme Court's ruling in *Green v. Advance Ross Electronics Corp.,* 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981), that the due process clause no longer sets the limit on the reach of the Illinois long-arm statute, calls into question the precedential value of pre–1981 cases construing the statute. *Rose v. Franchetti,* at 1207 n. 4. This court determined in *Rose* that such cases remain valid to the extent they tracked their analyses to the specific wording of the statute. *Id. Woodfield* and *AAAA Creative* did just that.

tional notions of fair play and substantial justice.'" *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). In the contractual setting, "parties who 'reach out beyond one state and create continuing contractual obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewizc,* 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (quoting *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)). Greathall intentionally sought to obtain Illinois citizens for work at its fair. It advertised and solicited in Illinois, and entered into contracts with Illinois citizens. It thus subjected itself to the jurisdiction of the Illinois courts.

## Venue

The defendants request a transfer of venue to the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404(a).[4] In order to obtain transfer under this provision, the defendant must establish (1) that venue is proper in the transferor forum, (2) that venue is proper in the transferee forum, and (3) that the transfer is "for the convenience of the parties and the witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

■ In diversity cases, venue lies "in the judicial district where all plaintiffs reside, or all defendants reside, or in which the claims arose." 28 U.S.C. § 1391(a). Since Leonardo is an Illinois corporation, venue is proper here. *See* 1391(c). The defendants maintain that Wisconsin also has proper venue because the causes of action arose there. Leonardo does not contest this point, but its failure to do so creates a problem.

Ordinarily, a party may waive objections to venue. *See* Fed.R.Civ.P. 12(h)(1). The Supreme Court, however, has held that a court may not transfer a case to a district lacking venue, even when the defendant requests the transfer, because such a district is not one "where [the action] might have been brought" for the purposes of the venue statute. *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

The reason for this rule is simple. When a plaintiff brings an action in an improper place, the defendant may either object or consent. If he objects, the case goes away. If he consents, then both parties are where they want to be. But if a defendant could obtain transfer to a place where venue is lacking, then the case could land in an improper venue without the plaintiff's consent; the defendant, but not the plaintiff, would have the power to take a case to an improper forum. *See id.* at 344, 80 S.Ct. at 1090; *see* 15 C. Wright & A. Miller, Federal Practice & Procedure, § 3855 at 219 (1976).

These problems, however, do not arise when a plaintiff, following a defendant's motion to transfer, consents to venue in the transferee forum. In such a situation, both parties have acquiesced in the forum, just as they could have done had the case originated there. The "gross discrimination" to the plaintiff prohibited by *Hoffman,* 363 U.S. at 344, 80 S.Ct. at 1090 does not arise.

Here, the defendants have argued that venue lies in Wisconsin. Leonardo has chosen not to challenge this point. Nothing in *Hoffman* nor in the policies underlying it compel this court to ignore Leonardo's concession and undertake a unilateral inquiry into the propriety of venue there. For the purposes of this motion, then, venue is proper in the transferee forum.

■ This leaves the third factor—whether transfer would be "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). A literal reading of the statute suggests that there are only two elements to the inquiry—i.e.,

---

**4.** Section 1404(a) provides that:
For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

the convenience of the parties and the convenience of the witnesses—and that, if they are satisfied, then transfer is, by definition, in the interest of justice. The courts, however, long have rejected this reading and instead have read the statute as requiring analysis of three elements: the convenience of the parties, the convenience of the witnesses, and the interest of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir.1986). Moreover, although the statute says nothing about the weight to be given to the plaintiff's choice of forum, courts agree that this factor places the burden on the defendant to show "a clear balance of inconvenience" favoring transfer. *Waites v. First Energy Leasing Corp.*, 605 F.Supp. 219, 221 (N.D. Ill.1985); *Coffey v. Van Dorn Iron Works*, 796 F.2d at 220 ("clearly more convenient").

The defendants concede that transfer would not reduce the inconvenience to the parties. Since Richard and Bonnie are in Minnesota, they will have to travel either way. Hirsch, on the other hand, would suffer far more inconvenience were he forced to litigate in Wisconsin than he will if the case remains here. The first element thus weighs against transfer.

The defendants argue that the convenience of the witnesses outweighs the parties' inconvenience, and does so enough to warrant transfer. According to them, there are important witnesses in Bristol, Wisconsin who not only would have to travel a substantial distance to a Chicago trial, but who may well fall beyond the subpoena power of the court.

■ The convenience of the witnesses is an extremely important factor in transfer analysis, particularly if they are material to the litigation and reside beyond the court's power to bring them to trial. *See* 15 C. Wright and A. Miller, Federal Practice & Procedure, § 3851 (1976). The defendants,

however, have missed the mark. That they did not identify the Wisconsin witnesses or describe what their testimony would be is problematic enough; that they did not take the trouble to determine just how far these witnesses are from Chicago calls into question the propriety of their transfer motion.

■ According to Leonardo's uncontroverted evidence, Bristol, Wisconsin, is less than 60 miles from Chicago and nearly 40 miles from Milwaukee, the location of the transferee court. Thus, these witnesses will have to travel a mere 15 miles further to attend trial here than they would were the case transferred. Moreover, under Rule 45(e)(1), this court may subpoena for trial any witness "within the district, or at any place without the district that is within 100 miles of the place of the hearing or trial," Fed.R.Civ.P. 45(e)(1), so all witnesses will be subject to this court's subpoena power.[5] The convenience of the witnesses thus lends no support to the defendants' motion.

The final element is the catch-all interest of justice. It encapsulates a host of considerations pertaining to "the efficient functioning of the courts," *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986), but only one of them is at issue here: All else equal, there is an advantage to having diversity cases tried in the district most familiar with the applicable state law. *Id.;* 15 C. Wright & A. Miller, Federal Practice & Procedure, § 3854 at 296 (1976).

■ Under *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), the transferee court must apply state law in the exact manner in which the transferor court would have. *Id.* at 639, 84 S.Ct. at 820. Thus, the transferee court must look to the choice of law rules of the transferor's state to determine the applicable law.

---

5. Leonardo suggests in its brief that the defendants' failure to determine the distance between Chicago and Bristol warrant sanctions under Fed.R.Civ.P. 11. Because Leonardo has not noticed a motion to this effect, the court will not address the issue at this time. Leonardo may make such a motion in the future, but before

doing so it should recall that one frivolous argument in an otherwise legitimate brief does not violate Rule 11. Thus, it will have to show that the fact that the defendants' witnesses all fell within the court's subpoena power renders the entire motion for transfer frivolous.

**956**

The defendants correctly note that, given the choice of law provision in the contract, Wisconsin law will govern the contract claim. But any marginal weight this has on the side of transfer—and it would not be enough in any case—is offset by the fraud claim. The defendants' assert that Wisconsin law "presumably" would apply to this claim, but their very uncertainty works against them. Since Illinois conflicts rules apply, this court, sitting in Illinois, is the preferable one to resolve the choice of law problem.

In sum, then, each element in the transfer analysis either comes down neutral or militates against transfer. The defendants obviously have not satisfied their burden on a transfer motion.

## CONCLUSION

The defendants' motion to dismiss or transfer is denied.