**BLANCO OSO INTERNATIONAL TRADING COMPANY, Plaintiff,**

v.

**SOUTHERN SCRAP MATERIAL CO., LTD., Defendant.**

No. 89 C 8923.

United States District Court, N.D. Illinois, E.D.

April 25, 1990.

John Grivetti, Spring Valley, Ill., Daniel J. Bute, Ottawa, Ill., for plaintiff.

Damon E. Dunn, Jonathan Vegosen, Levin & Funkhouser, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Southern Scrap Material Company, Ltd., has moved under Rule 12(b)(2), Fed.R.Civ. Pro, to dismiss the suit of Blanco Oso International Trading Company. Southern Scrap contends that this court lacks jurisdiction over the company. Blanco Oso has presented weak arguments for why Southern Scrap is wrong, and pleas for a delay in the decision on Southern Scrap's motion until Blanco Oso has had a chance to discover more evidence.

The court's duty in considering Southern Scrap's motion is straightforward. The Seventh Circuit described that duty succinctly in *Nelson by Carson v. Park Industries, Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983) (citations omitted):

> To determine whether exercising personal jurisdiction is proper, a court may receive and weigh affidavits prior to trial on the merits. During this preliminary proceeding, although the burden of proof rests on the party asserting jurisdiction, if the district court's decision is based on the submission of written materials the burden of proof is met by a prima facie showing that personal jurisdiction is conferred under the relevant jurisdictional statute. Further, the party asserting jurisdiction is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.

From Blanco Oso's complaint and the affidavits submitted by the parties, these are the facts: Blanco Oso is an Illinois corporation which has its principal place of business in Illinois. Southern Scrap is a Louisiana corporation whose principal place

of business is in that fair state. Southern Scrap has no ongoing business, employees, or agents in Illinois, although someone has told Blanco Oso's General Manager, Gerald Young, that Southern Scrap has done business (when, Young does not say) with at least three Illinois companies other than Blanco Oso. Blanco Oso and Southern Scrap both buy and sell scrap metals.

Sometime in 1985, an agent of Southern Scrap contacted Young about trying to buy scrap metal located in Illinois. An affidavit from Young does not say where these negotiations occurred, or where the agent lived, but elsewhere in the affidavit Young refers to a Southern Scrap agent who lived in Missouri. Regardless, these negotiations were not fruitful. Sometime later— Young does not say when—employees of Southern Scrap contacted Young about buying scrap auto bodies. Young does not say where these talks took place, or what was their result.

The third time was the charm. In June 1989, Young contacted Southern Scrap's Louisiana offices. Young was in the U.S. Virgin Islands at the time, but he made it clear to Southern Scrap that he was representing Blanco Oso in the sale of 3000 gross tons of scrap metal located in the Virgin Islands. The parties negotiated many of the details of their resulting contract between June and August 1989, mostly over the telephone lines between Louisiana and the Virgin Islands. Southern Scrap attempted to send the final copy of the contract to the Virgin Islands, but for technical reasons it could not complete the transmission. Instead, at Young's suggestion, Southern Scrap sent the final copy to Illinois.

By the terms of the parties' contract, Southern Scrap was to pay a $15,000 advance to Blanco Oso upon signing of their agreement. Title to the scrap was to pass upon delivery to Southern Scrap and Southern Scrap's acceptance. Southern Scrap promised to make final payment upon Blanco Oso's presentation of an invoice. The contract does not mention where this would take place.[1]

■ In *Rose v. Franchetti*, 713 F.Supp. 1203, 1205 (N.D.Ill.1989), this court noted that a court acquires personal jurisdiction over a defendant "when the plaintiff properly serves the defendant with process pursuant to a statute or rule, and the service does not violate due process." Like the defendant in *Rose*, Southern Scrap does not object to the manner of service which the plaintiff employed. The only question is whether Illinois law permits service on Southern Scrap. See Rule 4(e). Blanco Oso argues that Illinois law authorizes service in two ways. It first contends that Illinois's "long-arm" statute, Ill.Rev.Stat. ch. 110, ¶ 2–209(a)(1) (1987), permits service "as to any cause of action arising from … the transaction of any business within this State." It argues second that under the common law of Illinois, service is permitted upon any entity which is doing business within Illinois.

In determining whether ¶ 2–209(a)(1) authorizes service of process in a federal civil action, the court should ask whether (1) the defendant transacted any business in Illinois, (2) the cause of action arises from that transaction, and (3) the exercise of jurisdiction is consistent with prevailing constitutional standards of due process. See *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 590 (7th Cir.1984); *J. Walker & Sons v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 402 (7th Cir.1987).[2] While there

1. The court takes this fact from the parties' contract, which Blanco Oso attached to its complaint. Young says in his affidavit that Southern Scrap was to make all payments to Illinois. The court prefers the parties' contract over Young's statement of belief, as the parties wrote the contract free of any desire to avoid a dismissal under Rule 12(b)(2). See *Olpin v. Ideal National Insurance Company*, 419 F.2d 1250, 1255 (10th Cir.1969) (court may prefer language of exhibits over party's characterization of them in deciding motion to dismiss).

2. The parties have assumed that the test for whether an entity has transacted business within the meaning of ¶ 2–209(a)(1) has not changed since the Illinois legislature amended Illinois's long-arm statute. See Pub. Act 86–840, 1989 Ill.Legis.Serv. 4069 (West). The effective date of this amendment was September 7, 1989, nearly three months before Blanco Oso filed its complaint. See *id.* at 4070. The Seventh Circuit has suggested that the amendment made ¶ 2–209 co-extensive with minimum due process

is evidence that Southern Scrap or its agents transacted business in Illinois at some time prior to the parties' discussions in the summer of 1989, there is no evidence that Southern Scrap was transacting business with anyone in Illinois other than Blanco Oso in the summer of 1989. Since it is undisputed that Blanco Oso's present cause of action arose from whatever business the parties conducted in the summer of 1989, the key question is whether Southern Scrap's activities at that time amounted to the transaction of business in Illinois.

> The determination of whether defendant sufficiently transacted business in Illinois so as to avail himself of the benefits of Illinois law requires consideration of several factors: who initiated the transaction; where the contract was entered into; and where the performance of the contract was to take place. While none of these factors has been held to be controlling, each of them has been held to be significant.

*Gordon v. Tow*, 148 Ill.App.3d 275, 280–81, 101 Ill.Dec. 394, 398, 498 N.E.2d 718, 722 (1986) (citations omitted). See also *Leonardo's Inc. v. Greathall, Ltd.*, 714 F.Supp. 949, 952–53 (N.D.Ill.1989). In this case, it is undisputed that Blanco Oso initiated this transaction (and not from Illinois—Young was in the Virgin Islands). While the parties conducted their negotiations outside of Illinois, the final act which created a contract between the parties occurred in Illinois. See *Gordon*, 148 Ill.App.3d at 282, 101 Ill.Dec. 394, 498 N.E.2d 718, quoting *Youngstown Sheet & Tube Co. v. Industrial Com.*, 79 Ill.2d 425, 433, 38 Ill.Dec. 829, 833, 404 N.E.2d 253, 257 (1980) (" 'the place where the last act necessary to give validity to the contract is done is the place where the contract is made.' "). Most of the performance of the contract was to take place outside of Illinois, since Blanco Oso promised to ship scrap from the Virgin Islands to Louisiana, but part of Southern Scrap's end of the bargain was to pay a $15,000 advance to Blanco Oso, presumably to Blanco Oso's office in Illinois.

As this court noted in *Leonardo's*, Illinois cases provide "little guidance" in balancing the factors listed in *Gordon*. *Leonardo's*, 714 F.Supp. at 953. It strikes the court that the factors in this case tilt against jurisdiction over Southern Scrap. The business acts which occurred in this case had almost no connection with Illinois. But for a faulty transmission, the parties would have executed their contract outside Illinois. As for Southern Scrap's obligation to send an advance payment to Illinois, that alone would not amount to the transaction of business, see *Telco Leasing, Inc. v. Marshall Cty. Hospital*, 586 F.2d 49, 52 (7th Cir.1978) (per curiam); *Northern Trust Co. v. Randolph C. Dillon, Inc.*, 558 F.Supp. 1118, 1123 (N.D.Ill.1983); the court is not persuaded that the case for jurisdiction is that much stronger when the payment follows the mere signing of a contract negotiated elsewhere.

As one Illinois court has written, "[a] defendant transacts business in Illinois when substantial performance of his or her contractual duties is to be rendered in Illinois," or when the defendant "invokes the benefits and protections of Illinois law in the contractual relationship. . . ." *First Nat'l Bk of Chicago v. Boelcskevy*, 126 Ill.App.3d 271, 274, 81 Ill.Dec. 380, 383, 466 N.E.2d 1182, 1185 (1984). Southern Scrap never obligated itself to render substantial performance of its contract with Blanco Oso in the state of Illinois, nor did it do

---

requirements, which if true would obviate the need for separate inquiries into whether ¶ 2–209 conferred jurisdiction and whether the exercise of jurisdiction comported with due process. See *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 n. 5 (7th Cir.1990). Arguably, the amendment would also cast doubt on whether the Illinois courts' prior tests for the transaction of business under ¶ 2–209(a)(1) have any bearing on the exercise of jurisdiction. Neither party has raised this issue, and as Blanco Oso bears the burden of persuading this court that the exercise of jurisdiction over Southern Scrap is proper, the court will deem Blanco Oso as having waived the argument. Blanco Oso should not bemoan this determination, however: this court shares the concern expressed by Judge Shadur in *Bankers Leasing Association, Inc. v. Tompkins, McGuire & Wachenfeld*, 734 F.Supp. 309 (N.D.Ill.1990), about the constitutionality of retroactive extensions of personal jurisdiction.

anything to invoke the benefits or protections of Illinois law. Accordingly, Southern Scrap did not transact business within the meaning of ¶ 2–209(a)(1).

■ Blanco Oso's second proposition is that this court has jurisdiction by virtue of Illinois's common law "doing business" jurisdiction. After the Illinois legislature's recent amendments to ¶ 2–209, it may be incorrect to call this form of jurisdiction merely a creature of the common law, as the amendments expressly codify "doing business" jurisdiction. See 1989 Ill.Legis. Serv. 4070 (newly enacted ¶ 2–209(b)(4), providing for jurisdiction in any action "against any person who is a natural person or corporation doing business within this State"). Still, there is no suggestion that the legislature intended its codification of "doing business" jurisdiction to depart from the common law version of that jurisdiction; it is to that version which the court turns now.

Illinois's "doing business" jurisdiction is "a vestige of an era in which a state could assert jurisdiction over only those present within its borders." It allows a court "to assume jurisdiction over corporations with substantial business in Illinois, on the fiction that this business renders them 'constructively present in this State.'" *Leonardo's*, 714 F.Supp. at 952 (citations omitted). "When proceeding under this doctrine, a plaintiff need not establish that his cause of action arose from the defendant's contacts with Illinois," *id.*, but the plaintiff must show at a minimum that the defendant was doing business in Illinois at the time the plaintiff made the defendant a party to the plaintiff's suit and served the defendant with process. This is to insure that the defendant's contacts with Illinois are of a "continuous, systematic, or permanent" nature. See *Reeves v. Baltimore & Ohio R.R. Co.*, 171 Ill.App.3d 1021, 1027, 122 Ill.Dec. 145, 149, 526 N.E.2d 404, 408 (1988).

Taking the facts most favorably to Blanco Oso, this court cannot say that Southern Scrap was doing sufficient business in Illinois for this court to have jurisdiction over it. Blanco Oso has not put forth any facts that show that Southern Scrap was doing business in Illinois while the parties were negotiating their contract, when Blanco Oso filed this suit, or when Blanco Oso served Southern Scrap with process. Blanco Oso has put forth evidence which shows only that Southern Scrap did business with it sometime before June 1989, and that it did business with three other companies on some other occasion. This evidence does not rebut Southern Scrap's evidence that at the times pertinent to this court's jurisdictional inquiry, Southern Scrap was not doing business in Illinois, nor had employees or agents in the state.

From the facts which are before the court, it appears that the court may not exercise jurisdiction over Southern Scrap under Illinois law.[3] Blanco Oso would like to buy a bit more time, and has asked the court to permit discovery on the issue of jurisdiction. Rule 12(d) gives the court the discretion to delay determination of a motion under Rule 12(b)(2) and to allow discovery. See Charles Alan Wright and Arthur R. Miller, 5 Federal Practice and Procedure § 1351 (West 1969). Blanco Oso has not suggested to the court, however, how it proposes to conduct discovery or what it expects to find. At best, Blanco Oso proposes a fishing expedition, something which this court is loath to permit under these circumstances. The facts of this case are simple, and are of recent vintage. There is only one defendant, with whom Blanco Oso has had contact for at least five years. The court suggests that Blanco Oso could make better use of its time filing suit in the federal courts in Louisiana, for even if this court had jurisdiction over Southern Scrap, it is likely that the court would have had to send the case to Louisiana anyway. See 28 U.S.C. § 1404(a) (1982).

The court dismisses Blanco Oso's claims against Southern Scrap for lack of jurisdiction over Southern Scrap.

---

**3.** As a result, the court need not decide if such an exercise would comport with due process.