Isadore GOLDBERG d/b/a Assured
Lifetime Benefits, Plaintiff,

v.

Philip MILLER, Nancy Miller
and Lifetime Options,
Inc., Defendants.

No. 94 C 3899.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 26, 1995.

Leonard D. Saphire–Bernstein, Law Office of Leonard Saphire–Bernstein, Chicago, IL, for plaintiff.

Mary K. Schulz, Vigil, Berkley, Schulz & Gordon, P.C., Jay H. Tressler, James K. Borcia, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Isadore Goldberg d/b/a Assured Lifetime Benefits ("Assured") filed an amended complaint against Lifetime Options, Inc. ("LOI"), Philip Miller and Nancy Miller ("Mr. Miller" and "Ms. Miller" and collectively, the "Millers") on August 30, 1994. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332. Assured alleges tortious interference with contractual relations against LOI and breach of contract against the Millers.

LOI has filed a motion to dismiss Assured's amended complaint for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. The Millers have moved to dismiss Assured's amended complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motions to dismiss are granted.

### Background

Assured, an Illinois citizen, is a viatical settlement company which purchases at a discount from face value existing life insurance policies from individuals facing life threatening or catastrophic illnesses. LOI, a Maryland corporation having its administrative offices in Arlington, Virginia, is also such a company. Mr. Miller is a California citizen who has been diagnosed HIV positive. Ms. Miller is a California citizen who has been married to Mr. Miller since August 8, 1981.

In March 1993, a broker named Francis Welcome ("Mr. Welcome") who works for or did business as Lifestyle Resources Corporation ("Lifestyle")[1] telephoned Mr. Miller in California. Mr. Welcome told Mr. Miller that he was aware of Mr. Miller's medical condition and that he was in a position to negotiate a transfer and assignment of Mr. Miller's life insurance policy, for value, with a viatical settlement company. Mr. Welcome's contact was not solicited by Mr. Miller. At some point, Mr. Welcome informed Mr. Miller that a viatical settlement company in

---

1. Mr. Miller states in his affidavit that he was informed and believed that Mr. Welcome initiated his contact from the state of Maryland. Assured has not contested this statement.

Illinois named Assured was interested in purchasing Mr. Miller's life insurance policy.

Assured, Mr. Miller and Mr. Welcome then negotiated the sale to Assured of Mr. Miller's life insurance policy. According to uncontradicted statements in Mr. Miller's affidavit, nearly all contact made with Assured was through Mr. Welcome and all communication with Mr. Miller took place in California.[2] Mr. Miller Aff., ¶ 14. Ms. Miller did not participate in the negotiations and never had any direct contact with Assured. She occasionally spoke to Mr. Welcome regarding the necessity of her signing certain documents.

In June 1993, the parties reached agreement. Mr. Miller executed in San Diego County, California a Purchase Agreement and Absolute Assignment assigning all rights and title under his life insurance policy to Assured. Mr. Miller also executed in San Diego county the Insured Certification, an Irrevocable Power of Attorney in favor of Milton Heching and an Authorization to Release Policy Information. Ms. Miller executed in San Diego county a Purchase Agreement, an Absolute Assignment and Insured Certification. Assured then paid the Millers $200,000 and Lifestyle $17,000.

Assured alleges in its amended complaint that after it paid these sums, LOI learned of Assured's contract with the Millers, that it offered the Millers more money than they had received from Assured in return for the life insurance policy that the Millers had already transferred to Assured, and that Mr. Miller and LOI sent letters and made phone calls to Assured requesting Assured to rescind its agreement with the Millers. Ultimately, Assured agreed to reassign the policy proceeds and cancel the power of attorney in return for the amount of money it paid to the Millers and an additional amount to cover its costs. Assured claims that it reserved its right to proceed against Mr. Miller.

## Discussion

■ A federal district court in Illinois has personal jurisdiction over a party involved in a diversity action only if Illinois courts would have personal jurisdiction. *Michael J. Neuman & Associates, Limited v. Florabelle Flowers, Incorporated,* 15 F.3d 721, 724 (7th Cir.1994). The burden of proving jurisdiction over a nonresident defendant rests with the plaintiff. 5A Wright and Miller, FEDERAL PRACTICE AND PROCEDURE, § 1351 at 248 (1990).

### A. *LOI*

#### 1. Illinois Long–Arm Statute: Section 2–209(a)(2)

The Illinois long-arm statute gives an Illinois court jurisdiction over a cause of action arising from a person's "commission of a tortious act within this State." 735 ILCS § 5/2–209(a)(2). Assured claims that this Court has jurisdiction over LOI under this section of the long-arm statute due to LOI's alleged tortious interference with Assured's contract with the Millers.

■ The acts that form the basis of tortious interference with contractual relations, *i.e.,* defendant's intentional and malicious inducement of a breach of contract, must be directed at parties other than the plaintiff. *Kraft Chemical Company v. Illinois Bell Telephone Co.,* 240 Ill.App.3d 192, 608 N.E.2d 243, 247, 181 Ill.Dec. 170, 174 (1st Dist.1992). Assured does not allege that any of LOI's conduct directed at the Millers occurred in Illinois. In addition, LOI's affidavit attached to its motion to dismiss states:

5. That none of the communications between the Defendants herein took place in the state of Illinois.

6. That at no time during our efforts to secure the purchase of the Miller insur-

---

**2.** Assured has filed an affidavit by Milton Heching, who does not identify his position with Assured but who says he did work for Assured in this matter. Mr. Heching does not contradict Mr. Miller's statements. While in its complaint Assured alleges generally that Mr. Miller made phone calls and sent letters to Assured in Illinois, it did not repeat these allegations, or provide any detail to support the general statements, in any affidavit in opposition to the motion to dismiss. A plaintiff may not rest on the bare pleadings alone in resisting a motion to dismiss for lack of in personam jurisdiction but must "sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n. 9 (3d Cir.1984).

ance policy in question did LOI have anyone visit the state of Illinois for any reason.

LOI Aff., ¶¶ 5, 6. As Assured does not contradict these well-alleged facts by counter-affidavit, they are taken as true. *Illinois Tool Works, Inc. v. Independent Packing Service,* 1994 WL 604341, *1–2, 1994 U.S.Dist. Lexis 15749, *3 (N.D.Ill. October 27, 1994). Because LOI's alleged tortious conduct did not occur in Illinois, it is not subject to jurisdiction under Section 2–209(a)(2) of the long-arm statute. *See Woodwork Corp. of America v. Cecil Malone Co.,* 1993 WL 112553, *4–5, 1993 U.S.Dist. LEXIS 4511, *13–*14 (N.D.Ill. April 8, 1993) (where actions which could constitute tortious interference did not occur in Illinois, there was no jurisdiction under Section 2–209(a)(2) of long-arm statute).

### 2. Due Process

■ Although there is no jurisdiction over LOI under Section 2–209(a)(2) of the long-arm statute, Illinois has extended its jurisdiction to the limits permitted by the due process guarantees of the federal and state constitutions. 735 ILCS § 2–209(c). Federal due process requires an Illinois court to exercise jurisdiction over a defendant who has "certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Michael J. Neuman & Associates, Limited v. Florabelle Flowers, Incorporated, supra,* 15 F.3d at 725 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). A defendant who "purposefully avails himself of the privilege of conducting activities within the forum state" satisfies this test. *Dehmlow v. Austin Fireworks,* 963 F.2d 941, 946 (7th Cir.1992). Courts must consider foreseeability, that is, whether the defendant's contacts with the forum state are such that he could have anticipated being haled into court in that state. *Heritage House Restaurants v. Continental Funding,* 906 F.2d 276, 283 (7th Cir.1990).

■ Assured's only allegations that could connect LOI to Illinois are that LOI made telephone calls and sent letters to Assured requesting Assured to rescind its agreement with the Millers. Amended Complaint, ¶¶ 12, 15. LOI's letter of August 11, 1993, attached to the amended complaint, provides some documentation in support of this allegation. In that letter, LOI asked Assured to sign a release and settlement which LOI and the Millers prepared.

Assured's allegations do not show that LOI created "continuing obligations" between itself and Illinois residents. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1984). The acts constituting LOI's alleged tortious interference did not occur in Illinois, and due process does not permit this Court to base jurisdiction on alleged tortious conduct that took place outside Illinois. *Hexacomb Corp. v. GTW Enterprises,* 1994 WL 174114, *5–6, 1994 U.S.Dist. Lexis 5923, *15 (N.D.Ill.1994).

Furthermore, LOI's uncontradicted affidavit states:

7. That LOI has no offices, agents or other sales force located within the state of Illinois either now nor has it had in the past.

8. That LOI has no telephone listings in the state of Illinois now nor has it had in the past.

9. That LOI does not conduct advertising in the state of Illinois now nor has it done so in the past.

10. That LOI does not own any real or personal property in the state of Illinois now nor has it in the past.

11. That LOI has never purchased a life insurance policy from a resident of the state of Illinois.

LOI's Aff. ¶¶ 7–11. Because LOI's contacts with Illinois are too attenuated to constitute sufficient minimum contacts, haling LOI into an Illinois court would violate the due process clause of the United States Constitution. *See Burger King Corp. v. Rudzewicz, supra,* 471 U.S. at 475, 105 S.Ct. at 2183–84.

### B. *Philip and Nancy Miller*

### 1. Illinois Long–Arm Statute: Sections 2–209(a)(1) and (a)(7)

■ Assured asserts that this Court has jurisdiction over the Millers either on the

basis that they transacted business within this State or made or performed a contract or promise substantially connected with Illinois. 735 ILCS § 5/2–209(a). Only the acts of defendant can be considered in determining whether business was transacted in Illinois under Section 2–209(a)(1) of the long-arm statute. *Gordon v. Tow,* 148 Ill.App.3d 275, 498 N.E.2d 718, 722, 101 Ill.Dec. 394, 398 (1st Dist.1986).

■ The Illinois courts would not find that the Millers transacted business in Illinois merely by entering into a contract involving an Illinois resident. *Poplar Grove State Bank v. Powers,* 218 Ill.App.3d 509, 578 N.E.2d 588, 596, 161 Ill.Dec. 230, 238 (2d Dist.1991). In determining whether the Millers transacted business in Illinois, this Court must consider who initiated the transaction. *Gordon v. Tow, supra,* 498 N.E.2d at 722, 101 Ill.Dec. at 398. The Millers' affidavits state that Mr. Welcome, a broker acting on behalf of Assured, initiated the relationship and that Mr. Welcome's contact was unsolicited. Mr. Miller Aff., ¶¶ 6–8; Ms. Miller Aff., ¶ 6. Because Assured does not contradict these assertions by counter-affidavit, they are taken as true. *Illinois Tool Works, Inc. v. Independent Packing Service,* 1994 WL 604341, *1–2, 1994 U.S.Dist. Lexis 15749, *3 (N.D.Ill. October 27, 1994). Thus, a broker, in Maryland, acting on behalf of Assured initiated the transaction.

Although the formalities of contract execution are not determinative, the Court must next take into account where the parties entered into the contract. *Poplar Grove State Bank v. Powers, supra,* 578 N.E.2d at 596, 161 Ill.Dec. at 238; *Gordon v. Tow, supra,* 498 N.E.2d at 722, 101 Ill.Dec. at 398. The Millers executed the contract in California. Assured does not dispute this fact but argues that the contract was not created until the signed copies were received by Assured. The contract, however, did not require actual delivery as a condition precedent to contract formation. Delivery was not, therefore, an essential element to formation of the contract. *Stuart Park Associates Limited Partnership v. Ameritech Pension Trust,* 846 F.Supp. 701, 710 (N.D.Ill.1994). The contract was entered into in California.

The Court must finally consider where the performance of the contract was to occur. *Gordon v. Tow, supra,* 498 N.E.2d at 722, 101 Ill.Dec. at 398. The Millers executed all required documents in California and received payment from Assured in California.

Because a broker acting on behalf of Assured initiated the transaction, the Millers entered into the contract in California and the Millers performed in California, the Millers did not transact business in Illinois under Section 2–209(a)(1) of the long-arm statute. Accordingly, this Court does not have jurisdiction over the Millers under Section 2–209(a)(1).

■ To determine whether the Millers made or performed any contract or promise substantially connected with Illinois under Section 2–209(a)(7) of the long-arm statute, the court must view the contract as a whole. *Woodwork Corp. of America v. Cecil Malone Co.,* 1993 WL 112553, *5–6, 1993 U.S.Dist. LEXIS 4511, *15 (N.D.Ill. April 8, 1993). An examination of the entire contract reveals that a broker acting on behalf of Assured initiated the relationship by calling Mr. Miller in California, Mr. Miller negotiated the contract from California, the Millers executed the contract and all relevant documents in California, they received payment from Assured in California, and they never traveled to Illinois in connection with the contract. I conclude that the contract was not substantially connected with Illinois. *See Pfeiffer v. Insty Prints,* 1993 WL 443403, *4, 1993 U.S.Dist. LEXIS 15319, *12 (N.D.Ill. October 28, 1993) (contracts were not substantially connected with Illinois where defendants did not go to Illinois to conduct business pursuant to the contracts, did not advertise or solicit business in Illinois and performed contractual duties outside of Illinois). Thus, the Court lacks jurisdiction over the Millers under Section 2–209(a)(7) of the long-arm statute.

## 2. Due Process

As noted in the discussion above concerning jurisdiction over LOI, even though there is no jurisdiction based on Sections 2–209(a)(1) and (a)(7) of the long-arm statute,

this Court may exercise jurisdiction in appropriate cases based on the due process guarantees of the federal and state constitutions. 735 ILCS § 2–209(c). The Court must examine whether the defendants ˙ intentionally established minimum contacts in Illinois by purposefully availing themselves of the privilege of conducting activities within Illinois. *Dehmlow v. Austin Fireworks, supra,* 963 F.2d at 946. The defendants' conduct in relation to the forum state, not the unilateral actions of the plaintiff, determine jurisdiction. *Id.* The fact that an Illinois corporation is affected by the acts of a nonresident is not sufficient to satisfy due process considerations. *Heritage House Restaurants v. Continental Funding Group, supra,* 906 F.2d at 282.

One of the inquiries relevant to the due process analysis is which party initiated the business transaction. *Id.* As discussed earlier, the Millers did not initiate the transaction. Another relevant inquiry is whether the contract required substantial performance in Illinois. *Mors v. Williams,* 791 F.Supp. 739, 743 (N.D.Ill.1992). Substantial performance in this case occurred in California. As discussed, the Millers executed the contract and all relevant documents in California, and Assured sent payment for the acquisition of the life insurance policy to the Millers in California. Because the Millers do not have sufficient contacts with Illinois, the exercise of personal jurisdiction over the Millers would offend the due process clause of the United States Constitution.

### C. *The Amended Complaint Fails To State A Claim For Relief*

The complaint in this case must be dismissed for an additional reason. The complaint purports to state a claim for tortious interference with contract. However, a tortious interference with contract requires

as an element of the tort that there be a breach of contract. *E.g., Kraft Chemical Company v. Illinois Bell Telephone Company,* 240 Ill.App.3d 192, 608 N.E.2d 243, 247, 181 Ill.Dec. 170, 174 (1st Dist.1992). In this case the contract alleged was between Assured Lifetime Benefits and Philip and Nancy Miller. According to the complaint, Assured purchased the Millers' life insurance policy for a certain sum of money. The Millers in turn assigned all of their rights in the life insurance policy to Assured. Attached to the complaint is a purchase agreement, including the assignment of all rights. In addition, Assured's response to defendants' motions to dismiss attaches the purported affidavit of Milton Heching, in which he says that the documents that the Millers were to convey to Assured were received and accepted by Assured. Assured's memorandum also states that it "accepted and maintained the documents which were to guarantee payment of the life insurance proceeds to plaintiff." Memorandum at 5. Assured has not alleged that the Millers were required to do anything else under their contract. Since the Millers had performed their contract there was no way that they could breach it. Since breach of a contract is an essential element in the tort of interference with contract Assured has failed to state a claim under Illinois law.

### Conclusion

For each of these reasons the complaint in this case is dismissed.[3]

### ENTER ORDER.

---

**3.** I have not dealt with defendants' alternative argument that this case must be dismissed because Assured agreed to rescind the contract and agreed that the additional amounts paid by the Millers would resolve any possible claims with regard to the contract. I note, however, that Assured, while omitting certain letters attached to its original complaint in filing its amended complaint, has not refuted their authenticity. It

appears undisputed that the amounts referred to in those letters were paid by the Millers. In view of this, and the conclusions reached by me on the 12(b)(6) portion of the motion to dismiss, I have serious question as to whether plaintiff and its attorney have complied with Rule 11, *Fed. R.Civ.P.* Since defendants' attorneys apparently did not follow the procedure required by paragraph (c)(1)(a) under Rule 11, I am simply noting

my concern in case of any further proceedings in this case.