**REAL COLORS, INC., Plaintiff,**

v.

**Jayprakash PATEL, Individually and d/b/a Jay Chem, Isochem Colors, Inc., and Prism International, Incorporated, Defendants.**

No. 96 C 6098.

United States District Court,
N.D. Illinois,
Eastern Division.

July 25, 1997.

Paul R. O'Malley, Ltd., Chicago, IL, for Plaintiff Real Colors, Inc..

Champ W. Davis, Jr., John T. Warlick, IV, Davis, Mannix & McGrath, Chicago, IL, for Defendant Isochem.

## MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

This matter comes before the Court on Defendant Isochem Colors, Inc.'s ("Isochem") motion to dismiss for lack of personal jurisdiction and improper venue, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). In the alternative, Isochem moves for a change of venue, pursuant to 28 U.S.C. § 1406(a) or § 1404(a). For the following reasons, Isochem's motion is granted in part, and denied in part.

### BACKGROUND

This case involves a supplier/"middleman" which alleges that it was wrongfully cut out of a deal by the manufacturer and the buyer. Plaintiff, Real Colors, Inc. ("Real Colors"), is an Illinois corporation, with its principal place of business in Chicago, Illinois. (Second Amended Complaint [2d Am. Compl.] ¶ 1.) Real Colors is a supplier of salt-free dyes. (Plaintiff's Response [to] Defendant's Motions to Dismiss and Transfer Venue [Pl.'s Resp.], Affidavit [Shah Aff.] ¶ 1.) Defendant Isochem is a North Carolina corporation, with its principal place of business in Rock Hill, South Carolina. (2d Am. Compl.¶ 4.) Isochem processes dyes into liquids in order to sell them to textile manufacturers. (2d Am. Compl.¶ 4.) Defendant Jay Chem is a corporation in India, owned by Jayprakash Patel. (2d Am. Compl.¶¶ 2–3.) Jay Chem manufactures dyes. (Shah Aff. ¶ 4.)

Initially, in August or September of 1994, Nirav Shah, an employee of Real Colors, called Isochem after seeing an advertisement in a trade magazine. (Shah Aff. ¶ 2.) Mr. Shah spoke with Isochem's Vice President, Bill Whisenant, about supplying Isochem

with dyes. (Shah Aff. ¶¶ 1–2.) At Isochem's request, Mr. Shah sent dye samples to Isochem. (Shah Aff. ¶ 2.)

On December 24, 1994, Jeff Zavitkovsky, Isochem's purchasing manager, called Real Colors and ordered one ton of Reactive Yellow 37 dye. (Shah Aff. ¶ 3.) Real Colors arranged for Jay Chem to send Isochem the one ton of Reactive Yellow 37 dye. (Shah Aff. ¶ 4.) Jay Chem delivered the dye to Isochem in March of 1994, and Isochem sent payment, in May of 1994, to Real Colors (in Illinois). (Shah Aff. ¶ 5.)

On February 7, 1995, Mr. Zavitkovsky faxed a form letter to Real Colors, which described how often inventory should be made available .[1] (Shah Aff. ¶ 6; Declaration of Jeff Zavitkovsky [Zavitkovsky Aff.] ¶ 4; Pl.'s Resp., Exhibit A.) Because Real Colors had extended Isochem a line of credit, on March 7, 1995, Mr. Shah, along with a co-owner of Real Colors, traveled to South Carolina to view Isochem's operations. (Shah Aff. ¶ 7.) While Mr. Shah was there, Messrs. Zavitkovsky and Whisenant proposed entering into a one-year contract. (Shah Aff. ¶ 7.) The contract, which was negotiated in South Carolina, stipulated that Real Colors would supply Isochem with Reactive Yellow 37 dye for one year. (Shah Aff. ¶ 7; Zavitkovsky Aff. ¶ 5; Pl.'s Resp., Exhibit B.) Real Colors asserts that this was to be an exclusive relationship, but Isochem states that it never intended to buy Reactive Yellow 37 dye exclusively from Real Colors. (Shah Aff. ¶ 7; Zavitkovsky Aff. ¶ 5 .) Pursuant to Real Colors' request, Isochem sent a copy of the agreement, that same day, to Real Colors' office in Illinois. (Zavitkovsky Aff. ¶ 6.; Pl.'s Resp., Exhibit B.)

In May of 1995, Mr. Shah, as an agent of Real Colors, met in Illinois with Mr. Patel, Jay Chem's owner and president, to form a contract stipulating that Jay Chem would supply Reactive Yellow 37 dye to Real Colors. (Shah Aff. ¶ 9.) That same day,

Messrs. Shah and Patel entered into an oral agreement that Jay Chem would not sell this dye directly to any of Real Colors' customers. (Shah Aff. ¶ 9; 2d Am. Compl., Count II, ¶ 6.)

During this meeting, Real Colors ordered approximately twenty-seven tons of Reactive Yellow 37 dye,[2] and had ten tons of the dye shipped to South Carolina. (Shah Aff. ¶ 9; 2d Am. Compl. ¶ 4.) Isochem did not pay for the dye, and had the dye stored in its warehouse, in South Carolina, until it could pay. (Zavitkovsky Aff. ¶ 7; 2d Am. Compl. ¶ 5.) Over the next several months, Isochem paid for three tons of the dye, mailing its payments to Illinois. (Shah Aff. ¶ 11.) Even though Isochem only bought the three tons, Mr. Zavitkovsky assured Mr. Shah that Isochem would eventually pay for the rest of the dye. (Shah Aff. ¶ 11.)

While Real Colors was waiting for Isochem to pay for the rest of the dye, an agent [3] of Jay Chem's contacted Isochem, in November of 1995, and offered to supply Reactive Yellow 37 dye directly to Isochem at a price lower than Real Colors'. (Shah Aff. ¶ 12.) Isochem advised Real Colors of this lower offer. (Shah Aff. ¶ 12; Pl.'s Resp., Exhibit E.) When Mr. Shah then informed Jay Chem that Isochem was Real Colors' client, Mr. Patel sent Isochem a letter, in which he told Isochem to disregard Jay Chem's lower price offer. (Shah Aff. ¶ 14; Pl.'s Resp., Exhibit F.)

In May of 1996, after several telephone conversations to determine what to do with the remaining dye that had been shipped, but never paid for by Isochem, Mr. Patel traveled to Illinois, and suggested that Mr. Shah send the dye back to Jay Chem in India. (Shah Aff. ¶ 15.) Mr. Shah claims that this was so that Jay Chem could sell the dye back to Isochem at a cheaper price than Real Colors offered. (Shah Aff. ¶¶ 15, 17.) That same day, Mr. Shah received a telephone call from Mr. Zavitkovsky, during which Mr. Za-

---

1. Real Colors asserts that this was an offer to enter a contract, but Isochem states that this letter was sent to all existing and prospective Isochem suppliers. (2d Am. Compl., Count I, ¶ 1; Zavitkovsky Aff. ¶ 4.)

2. There is a difference between the amount stated in Mr. Shah's Affidavit and the Second Amended Complaint.

3. Defendant Prism International, Incorporated ("Prism"). (Shah Aff. ¶ 13.)

vitkovsky recommended that Mr. Shah send the dye back to Jay Chem. (Shah Aff. ¶ 16.) Later, Mr. Shah learned that Isochem did buy Reactive Yellow 37 dye directly from Jay Chem. (Shah Aff. ¶ 18.)

On September 20, 1996, Real Colors brought suit against both Jay Chem and Isochem.[4] Real Colors is suing Isochem and Jay Chem for breach of contract. (2d Am. Compl., Counts I, II.) Real Colors is also suing Jay Chem for tortiously interfering with the contract between Real Colors and Isochem, and is suing Isochem for tortiously interfering with the contract between Real Colors and Jay Chem. (2d Am. Compl., Counts III, IV.) Additionally, Real Colors accuses both Isochem and Jay Chem of conspiracy to breach a contract and tortiously interfere with a contract. (2d Am. Compl., Count V.) Currently before the Court is Isochem's motion for dismissal based upon lack of personal jurisdiction and improper venue, or, in the alternative, a transfer of venue. (Defendant Isochem Colors, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, for a Change of Venue.)

## *DISCUSSION*

A motion to dismiss for lack of personal jurisdiction is properly brought under Federal Rule of Civil Procedure 12(b)(2). When ruling on such a motion, allegations in the complaint "are to be taken as true unless controverted by the defendants' affidavits . . . ." *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987). Conflicts between the parties' affidavits "are to be resolved in [the plaintiff's] favor." *Id.* Real Colors bears the burden of establishing a prima facie case for personal jurisdiction. *Michael J. Newman & Assocs., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir.1994). This Court may exercise personal jurisdiction over a defendant in a diversity case only if an Illinois state court could exercise personal jurisdiction. *Klump v. Duffus*, 71 F.3d 1368, 1371

(7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 2523, 135 L.Ed.2d 1047 (1996). Thus, in order for this Court to exercise personal jurisdiction over Isochem, Real Colors must first show that Illinois' long arm statute allows personal jurisdiction.[5] *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997).

### A. *The Illinois Long Arm Statute*

The Illinois long arm statute, in relevant parts, provides:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person . . . to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts: .

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State; [or]

(7) The making or performance of any contract or promise substantially connected with this State;

(c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

735 ILL. COMP. STAT. 5/2–209 (West 1997)("§ 5/2–209").

### B. *Sections 5/2–209(a)(1) and (7), Contract and/or Business Transactions*

■ Real Colors has not asserted jurisdiction using §§ 5/2–209(a)(1) and (7). However, even assuming, *arguendo*, that Real Colors had, these provisions would not give this Court personal jurisdiction over Isochem. When examining business transactions and contracts, Illinois courts look at: 1) who initiated the contacts; 2) where the contract was negotiated; 3) where the contract was entered; and 4) where substantial duties were

---

4. Real Colors is also suing Prism, an agent of Jay Chem's, for tortious interference with a contract and conspiracy to tortiously interfere with a contract. (2d Am. Compl., Counts III, V.)

5. Real Colors must also show that exercising personal jurisdiction over Isochem would not violate either the Illinois or United States Constitutions. *RAR*, 107 F.3d at 1276. The constitutionality of exercising personal jurisdiction over Isochem is discussed in Part D, *infra* at 15.

performed. *Rose v. Franchetti*, 713 F.Supp. 1203, 1208 (N.D.Ill.1989), *aff'd*, 979 F.2d 81 (1992); *Rohde v. Central R.R. of Ind.*, 930 F.Supp. 1269, 1272 (N.D.Ill.1996). While each of these factors is significant, no one factor is controlling. *Rose*, 713 F.Supp. at 1208.

■ Three of these factors clearly suggest that this Court lacks personal jurisdiction over Isochem. First, Real Colors initiated the contacts with Isochem when it placed the original telephone call in August or September of 1994. *See Id.* (finding that the "plaintiff initiated the contacts when [it] responded to the advertisement."). Second, it is undisputed that the contract was negotiated in South Carolina. (Shah Aff. ¶ 7; Zavitkovsky Aff. ¶ 5.) *See Rohde*, 930 F.Supp. at 1272 (lacking personal jurisdiction when there was, *inter alia*, no evidence that the contract was negotiated in Illinois). Third, none of the substantial duties performed under this contract were carried out in Illinois. The dye that was shipped to South Carolina never even entered Illinois. (Zavitkovsky Aff. ¶ 7.) *See Blanco Oso Int'l Trading Co. v. Southern Scrap Material Co.*, 735 F.Supp. 294, 296 (N.D.Ill.1990)(no substantial performance in Illinois, when defendant only made payments to Illinois for scrap material sent from the Virgin Islands).

Although it is unclear where the contract was "entered," this is not determinative, because the other factors clearly favor a finding that this Court lacks personal jurisdiction over Isochem. Real Colors asserts that the contract was not entered until Mr. Zavitkovsky mailed Mr. Shah (in Illinois) the confirmation of the negotiations, on March 7, 1995. (Pl.'s Resp. at 5.) Isochem seems to suggest that the contract was entered into at the meeting in South Carolina, and that Mr. Zavitkovsky only mailed the written confirmation to Illinois because Mr. Shah requested it. (Zavitkovsky Aff. ¶ 6.) Even if the contract was entered into when the confirmation was sent to Illinois, this element alone is not enough to establish personal jurisdiction under §§ 5/2–209(a)(1) and (7). *See Blanco*,

735 F.Supp. at 296 (finding that, even though the contract was not enacted until defendant sent payment to plaintiff in Illinois, the court did not have personal jurisdiction because all the negotiations and performance took place outside of Illinois).

Therefore, it is clear that the contacts were initiated by Real Colors, the contract between Isochem and Real Colors was negotiated in South Carolina, and none of the substantial duties were performed in Illinois. Thus, Real Colors has failed to establish that §§ 5/2–209(a)(1) and (7) of the long arm statute provide personal jurisdiction over Isochem.[6]

**C. *Section 5/2–209(a)(2), Commission of a Tort in Illinois***

**1. Tortious Interference with a Contract**

■ To establish jurisdiction under this provision of the long-arm statute, the plaintiff must allege that the defendant performed an act which caused an injury in Illinois. *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 282 (7th Cir.1990). Where the injury is merely economic, rather than physical or emotional, the plaintiff needs to show more than that the "harm [was] felt" in Illinois. *Turnock*, 816 F.2d at 335 ("An economic injury, by itself, is too remote from the defendant's misconduct to support the conclusion that a tortious act was committed in Illinois."). The Seventh Circuit has found that, if there is an economic injury, the plaintiff must additionally show "an intent to affect an Illinois interest." *Heritage House*, 906 F.2d at 282 (finding misrepresentations over the telephone show an intent to affect Illinois interests, and quoting *Arthur Young & Co. v. Bremer*, 197 Ill.App.3d 30, 143 Ill.Dec. 736, 741, 554 N.E.2d 671, 676 (1990)).

■ Although a stricter standard is used for economic injuries, courts have held that misrepresentations made during telephone calls to Illinois, if the misrepresentations result in an injury in Illinois, can satisfy the

---

6. Moreover, even if, *arguendo*, Isochem's actions qualified under §§ 5/2–209(a)(1) or (7), it is still not within this Court's power to constitutionally exercise personal jurisdiction. *See* due process discussion, in Part D, *infra* at 15.

requirements of § 5/2–209(a)(2). *Wysnoski v. Millet*, 759 F.Supp. 439, 442 (N.D.Ill.1991)(citing *Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341, 347 (N.D.Ill.1984)). However, where there is just one telephone call made, that call can give rise to jurisdiction in Illinois only if the call "constitutes the commission of a tortious act within Illinois." *Rose*, 713 F.Supp. at 1209. Thus, if there were no misrepresentations made during the telephone call to Illinois, then the call can not give rise to jurisdiction in Illinois. *See, e.g., Pendelton v. Germino*, No. 95 C 2350, 1995 WL 493449, at *8 (N.D.Ill. Aug.15, 1995)(holding that defendant's telephone calls could not give rise to jurisdiction because plaintiff did not "allege that [defendant] made any fraudulent misrepresentations or omissions of material fact to Plaintiff during their phone conversations.")

Here, Mr. Shah does not allege that any misrepresentations were made during the sole telephone call from Mr. Zavitkovsky, in May of 1996. (Shah Aff. ¶ 16.) Instead, Mr. Shah merely asserts that Mr. Zavitkovsky "advis[ed]" him to return the unsold dye to Jay Chem. This distinguishes the one telephone call here, from the communications in *Heritage House*, 906 F.2d at 278 (making numerous misrepresentations over the telephone that a $150,000 deposit would be secure), and *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir.1990)(sending telexes requesting reimbursement for fraudulent operating expenses). *See also Turnock*, 816 F.2d at 335 (although there was an economic injury, there was no intent to affect Illinois interests, because there were no fraudulent communications or meetings that took place in Illinois); *Jan Mark, Inc. v. Reidy*, No. 96 C 7206, 1997 WL 43203, at *4 (N.D.Ill. Jan.28, 1997)(finding that defendant's acts were distinguishable from those in *FMC Corp.*, 892 F.2d at 1311–12, because no false communications were sent).

Additionally, even if, *arguendo*, the telephone call in May of 1996 contained misrepresentations, "[t]he acts that form the basis of tortious interference [with a contract] must be directed at parties other than the plaintiff." *Continental Mobile Tel. Co., Inc. v. Chicago SMSA Ltd.*, 225 Ill.App.3d 317, 167 Ill.Dec. 554, 559, 587 N.E.2d 1169, 1174 (1992). For example, in *Goldberg v. Miller*, 874 F.Supp. 874, 875–76 (N.D.Ill.1995), plaintiff, an insurance company, brought suit against another insurance company for tortiously interfering with plaintiff's contract with a California citizen. In that case, the California citizen/policy holder was diagnosed with HIV, and contracted to sell his insurance policy in order to get the money before he died. *Id.* at 875–76. All communications between the defendant insurance company and the policy holder took place in California. *Id.* at 876. Because all of the defendant's conduct directed toward the policy holder took place outside Illinois, the court determined that it lacked jurisdiction. *Id.* at 876–77.

Here, Real Colors only asserts that a telephone call was made to Mr. Shah, its own employee, in Illinois. Since Real Colors does not allege that any acts between Isochem and Jay Chem (or any other party) occurred in Illinois, Real Colors has not alleged the commission of a tortious act in Illinois within the meaning of § 5/2–209(a)(2). Thus, Real Colors fails, under § 5/2–209(a)(2), to meet its burden of establishing a prima facie case of personal jurisdiction over Isochem.

### 2. Conspiracy Theory of Jurisdiction [7]

Although the Illinois Supreme Court has never rejected "[t]he idea of [personal] jurisdiction based on the acts of co-conspirators[, it] has been questioned." *Green v. Advance Ross Elecs. Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 662, 427 N.E.2d 1203, 1208 (1981). The Seventh Circuit has allowed personal jurisdiction under the conspiracy theory as long as there is 1) an actionable conspiracy and 2) a substantial act in the furtherance of the conspiracy that takes place in Illinois. *Textor v. Board of Regents*, 711 F.2d 1387, 1393 (7th Cir.1983).

---

**7.** The few cases that have used the conspiracy theory to justify personal jurisdiction have not made clear which provision of the long arm statute applies, but § 5/2–209(a)(2) is the most appropriate.

First, there is no actionable conspiracy here. A "[c]ivil conspiracy is an agreement of two or more people to commit an unlawful act, or to inflict a wrong against another, and an overt act that results in damages." *Old Sec. Life Ins. Co. v. Continental Ill. Nat'l Bank,* 740 F.2d 1384, 1397 (7th Cir.1984). Conspiracy alleging a tort as the underlying wrongful act is actionable, as long as it includes additional defendants or new facts not already pled in the underlying tort. *Thermodyne Food Serv. Prods., Inc. v. McDonald's Corp.,* 940 F.Supp. 1300, 1310 (N.D.Ill.1996)(allowing conspiracy to tortiously interfere with a contract to proceed, even though the same underlying tort had been pled, because it added a new defendant). It is necessary to add new defendants or facts, because unlike criminal law, tort law "does not punish 'inchoate,' which is to say purely preparatory, conduct. . . ." *Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 453 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). As a result, civil conspiracy requires damages. *Id.* Therefore, unless the plaintiff adds another defendant or new facts, a conspiracy count would merely result in another attempt to recover the same damages. *See Id.* (holding that district court could properly dismiss conspiracy count since damages were already covered in underlying tort). Here, there is no actionable conspiracy, because Real Colors does not allege any new facts or bring in any new defendants through its charge of conspiracy.

Because there is no actionable conspiracy, it is not necessary to address the second question—whether a substantial act in the furtherance of this alleged conspiracy occurred in Illinois.[8] Therefore, Real Colors does not meet its burden of showing a prima facie case for personal jurisdiction under the conspiracy theory.[9]

### D. *Section 5/2–209(c) and Due Process*

Section 5/2–209(c) reads: "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILL. COMP. STAT. 5/2–209(c)(West 1997). This provision now makes the long arm statute "coextensive" with Illinois and federal due process requirements. *Klump,* 71 F.3d at 1371.

Illinois courts "have given little guidance as to how state due process [ ] differs from federal [due process] . . . ." *RAR,* 107 F.3d at 1276. The Illinois Supreme Court has stated that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 398, 565 N.E.2d 1302, 1316 (1990). However, "[b]eyond this . . . [there is] scant case law with which to work." *RAR,* 107 F.3d at 1276.

Because of the limited case law on the Illinois due process requirement for personal jurisdiction, the Court will focus on federal due process. To satisfy the federal due process requirement, this Court can exercise jurisdiction over Isochem only if Isochem had sufficient "minimum contacts" with Illinois, and if exercising such jurisdiction would not "offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct.

---

**8.** Nonetheless, the Court notes that the facts in the case at bar do not rise to the same level that the substantial acts did in *Markarian v. Garoogian,* 767 F.Supp. 173 (N.D.Ill.1991), cited by Real Colors. *Markarian* involved a complex scheme to defraud a wealthy philanthropist. There, the court found that the substantial acts committed in the furtherance of the conspiracy by the defendant's co-conspirators "certainly" would confer jurisdiction over that defendant if committed by him personally. *Id.* Here, the substantial acts allegedly committed by Jay Chem in Illinois, in furtherance of the alleged conspiracy, were only directed at Real Colors, and would, therefore, not be enough to obtain jurisdiction over Jay Chem (or Isochem, if done by it personally). While acts toward the plaintiff can constitute a tortious act in a fraud case (like Markarian), the acts in a tortious interference case must be directed at a party other than plaintiff. *See* discussion Part C 1, Torticus Interference with a Contract, *supra* at 12–13.

**9.** Moreover, even if, *arguendo,* Isochem's actions qualified under § 5/2–209(a)(2), it is still not within this Court's power to constitutionally exercise personal jurisdiction. *See* due process discussion, in Part D, *infra.*

154, 158, 90 L.Ed. 95 (1945)(quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). In order to meet the requirement for minimum contacts, Isochem must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). To determine whether Isochem purposefully availed itself to Illinois, the Court must consider whether Isochem's connections with Illinois were enough that it should have "reasonably anticipate[d] being haled into court [here]." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

The mere fact that one party to a contract is a resident of the forum state does not, by itself, establish minimum contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985). In *Burger King*, the defendant entered into a franchise contract with a plaintiff that had its headquarters in Florida. *Id.* at 466, 105 S.Ct. at 2178–79. Although the defendant never traveled to Florida, his partner did. *Id.* Noting that the contract contained a provision choosing Florida's laws to govern the contract, the Supreme Court held that, by signing the contract, the defendant had purposefully availed himself of the benefits and protections of Florida law. *Burger King*, 471 U.S. at 479–82, 105 S.Ct. at 2185–87. Thus, the Supreme Court held that the defendant had established minimum contacts, and personal jurisdiction over him could be constitutionally exercised. *Id.* at 486, 105 S.Ct. at 2189–90.

Here, Isochem has not purposefully availed itself of the benefits of Illinois law. No agent of Isochem's was ever sent to Illinois, and there was no mention of Illinois law in the contract between Isochem and Real Colors. The mere mailing of payments to Illinois, along with the one telephone call made in May of 1996, are not enough to establish minimum contacts. *See Lakeside Bridge & Steel Co. v. Mountain State Constr. Co., Inc.*,

597 F.2d 596, 598–99, 603 (7th Cir.1979)(defendant did not purposefully avail itself by sending purchase orders, other mail, and making telephone calls during contract negotiations), *cert. denied*, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980); *see also Telco Leasing, Inc. v. Marshall County Hosp.*, 586 F.2d 49, 51 (7th Cir.1978)(no minimum contacts where everything was done outside Illinois, except that payments and copies of the contract were sent to Illinois). Thus, it would be unconstitutional to exercise jurisdiction over Isochem.[10]

### CONCLUSION

Real Colors has failed to meet its burden of establishing a prima facie case for personal jurisdiction, hence this Court lacks personal jurisdiction over Isochem.

**IT IS THEREFORE ORDERED** that:

Defendant Isochem Colors, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue or, in the Alternative, for a Change of Venue be, and the same hereby is, **GRANTED IN PART**, and **DENIED IN PART**.

Accordingly, **IT IS FURTHER ORDERED** that:

Defendant Isochem be, and hereby is, dismissed from this lawsuit.

---

**10.** Isochem's alternative motion to change venue and Real Colors' argument in opposition to such a change were both premised upon a finding of personal jurisdiction over Isochem. Thus, the Court declines to address the propriety of venue.